J-A24032-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| HASHAAM SHAHID, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| GHAZALA LUCIE RAHMAN, | : | |
| | : | |
| Appellee | : | No. 3306 EDA 2014 |

Appeal from the Decree Entered October 24, 2014,
in the Court of Common Pleas of Bucks County,
Civil Division, at No(s): 2009-62934

BEFORE:     PANELLA, WECHT, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:     **FILED SEPTEMBER 28, 2015**

Hashaam Shahid (Husband) appeals from the decree entered October

24, 2014,[1] which decreed that he and Ghazala Lucie Rahman (Wife) are

divorced, and ordered equitable distribution of the marital property.[2]  We

affirm.

---

[1] The decree is dated October 22, 2014, was filed on October 22, 2014, and was entered on the docket on October 24, 2014.  "The date of entry of an order in a matter subject to the Pennsylvania Rules of Civil Procedure shall be the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.[C].P. 236(b)." Pa.R.A.P. 108(b).  Instantly, notice in accordance with Pa.R.C.P. 236 was provided on October 24, 2014.  Accordingly, that is the date we use in this case.  The caption has been amended.

[2] On February 9, 2015, Wife, through counsel, filed a petition for leave to file a cross appeal because she claims she did not receive notice of Husband's appeal.  A notice of cross-appeal, like any notice of appeal, must be filed in the court from which the appeal is being taken. Pa.R.A.P. 902 ("An appeal permitted by law as of right from a lower court to an appellate court shall be

*Retired Senior Judge assigned to the Superior Court.

The trial court summarized the background of this case as follows.

> Husband was born [in 1977] in Pakistan, but became an American citizen during his marriage to [his] first wife. Husband is an optician by trade, but after separation, began selling replacement windows for Andersen Windows earning approximately $100,000 in 2013.
>
> Wife was born [in 1972] in Pakistan. Wife also had French citizenship through her mother, who is French. Wife graduated from the Sorbonne with a law degree. She did not practice law, but at the time the parties met in 2006, she was studying for a Ph.D. in Comparative U.S.-E.U. antitrust law at the Sorbonne. She did not complete this program. Wife obtained a Master of Laws (LLM) from [the University of Pennsylvania School of Law] after separation. She was also granted U.S. citizenship after separation. She has not been employed outside the home since 2007. Prior to that time, she earned approximately $70,000 per year doing consulting in the business law field.

taken by filing a notice of appeal with the clerk of the lower court within the time allowed by Rule 903 (time for appeal).”). Likewise, a motion for leave to file a cross appeal *nunc pro tunc*, like any motion for leave to appeal *nunc pro tunc*, must be filed with the court from which the appeal is being taken because such a decision requires fact-finding.

> The denial of an appeal *nunc pro tunc* is within the discretion of the trial court, and we will only reverse for an abuse of that discretion. In addition to the occurrence of fraud or breakdown in the court's operations, *nunc pro tunc* relief may also be granted where the appellant demonstrates that (1) [the] notice of appeal was filed late as a result of nonnegligent circumstances, either as they relate to the appellant or the appellant's counsel; (2) [he] filed the notice of appeal shortly after the expiration date; and (3) the appellee was not prejudiced by the delay.

*Rothstein v. Polysciences, Inc.*, 853 A.2d 1072, 1075 (Pa. Super. 2004) (citations and quotations omitted).

Because this Court cannot determine in the first instance whether Wife should be granted relief, we deny Wife's motion for leave to file cross appeal.

The parties met in April, 2006, on a plane from Pakistan, and married April 1, 2007 in a civil ceremony. Immediately after the wedding, Wife returned to France for a few weeks, then came back for approximately 3 months and prepared for a ceremonial wedding in July, 2007. She returned to France in August, 2007, for about a week and then tried to re-enter the United States on her waiver visa. She was denied admission as Homeland Security advised her she should be on a spouse visa since she was now married. She was not able to re-enter the United States until the end of December, 2007, when her immigration status was clarified and she eventually received a conditional green card. In July, 2008, Wife returned to France for around 14 days the first trip and 17 days the second trip.

The parties' final separation occurred on September 13, 2009. The parties were married 29 months prior to separation. However, they only lived together for approximately 22 of the 29 months.

The parties' separation was acrimonious. At various times in the fall of 2009, each party filed for protection from abuse ("PFA") against the other. However, no final PFA orders were ever entered. Criminal charges were also filed against Husband, but were [*nolle prossed*]. Wife has a separate pending civil tort action against Husband, which is on the dockets but has not had any activity since Wife's counsel withdrew in 2013.

Husband filed for divorce on September 30, 2009.

Trial Court Opinion, 10/24/2014, at 1-2 (unnecessary capitalization omitted).

The parties appeared for a hearing before a master, who filed a report on April 1, 2013. Wife moved for a *de novo* hearing, which, after numerous continuances, was held on March 4, April 9, July 28, and October 16-17, 2014. On October 24, 2014, the trial court entered a decree of divorce and

order of equitable distribution. That order provided, in relevant part, as follows.

> 1. All right, title and interest in the property located at 2253 New York Avenue, Bensalem, Pennsylvania is distributed to Husband. As between the parties, Husband shall be solely responsible for the mortgage, home equity loans, taxes, insurance, and other expenses of this property and shall indemnify and hold Wife harmless from any liability, interest, penalties, fees, or costs associated with default.
>
> 2. Husband shall make a payment to Wife in the amount of $77,960.14 within 60 days of the date of this Order.

Decree and Order, 10/24/2014.

Husband timely filed a notice of appeal. Both Husband and the trial court complied with Pa.R.A.P. 1925.

Husband sets forth three issues for our consideration, which we have reordered for ease of disposition.

> A. Whether the learned trial judge erred in failing to consider the premarital funds lost in the 2008 stock market collapse by Husband of $40,194.56?
>
> [B.] Whether the learned trial judge failed to consider the loss by the parties in the stock market totaling $72,147.14, when the parties' tax returns provide a total loss of $112,342 from investments which returns have been accepted by the IRS?
>
> [C.] Whether the learned trial judge failed to consider in making her recommended distribution of marital assets the negative equity in real property of $51,000 which is an obligation by Husband but valued at zero in her memorandum?

Husband's Brief at 6 (suggested answers omitted).

We review Husband's issues mindful of the following principles.

- 4 -

It is well established that absent an abuse of discretion on the part of the trial court, we will not reverse an award of equitable distribution. [In addition,] when reviewing the record of the proceedings, we are guided by the fact that trial courts have broad equitable powers to effectuate [economic] justice and we will find an abuse of discretion only if the trial court misapplied the laws or failed to follow proper legal procedures. [Further,] the finder of fact is free to believe all, part, or none of the evidence and the Superior Court will not disturb the credibility determinations of the court below.

*Lee v. Lee*, 978 A.2d 380, 382-83 (Pa. Super. 2009) (quoting ***Anzalone v. Anzalone***, 835 A.2d 773, 780 (Pa. Super. 2003)). Moreover,

[w]e do not evaluate the propriety of the distribution order upon our agreement with the court['s] actions nor do we find a basis for reversal in the court's application of a single factor. Rather, we look at the distribution as a whole, in light of the court's overall application of the [23 Pa.C.S.A. § 3502(a)] factors [for consideration in awarding equitable distribution]. If we fail to find an abuse of discretion, the [o]rder must stand. The trial court has the authority to divide the award as the equities presented in the particular case may require.

*Childress v. Bogosian*, 12 A.3d 448, 462 (Pa. Super. 2011) (internal citations and quotations omitted).

Husband's first two issues are inartfully presented. Husband asserts a number of concerns he has with the portion of the equitable distribution order where the trial court ordered him to pay Wife $72,147.14. Husband's Brief at 17-18; 19-20. To the best of our understanding, Husband is arguing that while he obtained the funds from Wife, they invested them together in the stock market and lost them together; therefore, they should share in that loss. Moreover, Husband claims he invested $40,194.85 of his money

and lost that as well. He contends this amount is supported by losses claimed in joint income tax returns for 2008 and 2009. Thus, Husband suggests that Wife should share in these losses.

What Husband's arguments fail to take into account is that the trial court did not believe Husband that he invested the money from Wife in the stock market in the first place. Husband testified about these stock losses beginning on June 2, 2014. The trial court directed Husband to put together "documentation on where the $71,000 went." N.T., 6/2/2014, at 260. At the following day of testimony, which was on July 28, 2014, Husband produced his bank statements from 2007. N.T., 7/28/2014, at 13. While Husband was able to produce evidence that deposits were made into his account, and similar sums were withdrawn shortly thereafter, the trial court found no credible evidence linking these amounts to stock that was purchased. At the hearing on October 16, 2014, Husband again tried to convince the trial court that he lost this money in the stock market. N.T., 10/16/2014, at 11-18; 43-50. In fact, after hearing all of this testimony, the trial court concluded that "[i]t is clear that the three large transfers were not to brokerage accounts." Opinion and Order, 10/24/2014, at 5.

The trial court set forth the following factual findings with respect to these funds obtained from Wife.

Husband asserted that the funds were lost in the stock market. He produced a 2008 tax return which showed short term losses for stock purchased in 2008, but there was no linkage between the Citizens Bank deposits and the stock losses. Husband tried to demonstrate this connection with his Exhibit H-25, which he testified was a record of his purchase of stock. We found H-25 almost unintelligible. It certainly was not a record from a brokerage firm. New evidence provided by Husband (Exhibits H-28 and H-31) still provided no link to an ING brokerage account.

We find both parties agree that Wife transferred at least $72,147.14 to Husband's [Citizens] bank account;[3] however, [Husband] cannot show what he did with the money. This is an extremely short term marriage and we will attempt to put the parties back into the financial position they were in prior to the marriage. Therefore, we direct that Husband must repay the $72,147.14 to Wife.

Opinion and Order, 10/24/2014, at 6 (footnote added).

After the trial court entered the October 24, 2014 opinion and order, Husband timely filed a motion for reconsideration. Attached to that motion were

85 pages of printouts of "statements" from ING, Citizens Bank and Interactive Brokers under Exhibit "B," which purportedly substantiate [Husband's] allegation of substantial losses he incurred due to the "stock market crash," along with a chart under Exhibit "C" which he created to purportedly "trace" Wife's

---

[3] Husband conceded that Wife transferred $72,147.14 to him. Wife asserted that there was an additional transfer of $15,705.15 to Husband on April 20, 2007. The trial court concluded that "Wife has not produced any evidence that the April 20, 2007 sum was at any time transferred to Husband's account or to his control." Trial Court Order and Opinion, 10/24/2014, at 5.

funds. According to Husband's Motion, this information "was only recently obtained and was not available previously according to representatives of both financial institutions, but was only made recently available based upon persistent efforts of [Husband]." Husband apparently believes the submission of these "documents" will overcome our previous determination, as noted in our [October 24, 2014 opinion,] that "there was no credible evidence connecting Wife's contributions to stock purchases" which therefore justifies reconsideration of our Order. We do not agree with Husband's position.

A review of Husband's "statements" reveals that they are essentially meaningless and do nothing to conclusively demonstrate a linkage between the deposit of Wife's funds, which were returned to her by the equitable distribution Order, and Husband's alleged investment losses due to stock market declines….

Decision and Order, 11/20/2014, at 4.

Based upon the foregoing, the trial court denied Husband's motion for reconsideration. Our review of the record reveals no abuse of discretion with the trial court's determinations. After conducting five days of hearings over the course of seven months, the trial court did not find credible Husband's testimony, nor did it find that the documentation supported his argument that he invested Wife's money in the stock market.

It is well-settled that "[t]he finder of fact is entitled to weigh the evidence presented and assess its credibility. The fact finder is free to believe all, part, or none of the evidence and the Superior Court will not disturb the credibility determinations of the court below." ***Smith v. Smith***,

904 A.2d 15, 20 (Pa. Super. 2006) (citations and quotations omitted). Accordingly, we do not disturb the trial court's order on this basis.

Moreover, there is no question that this was a very short marriage, which was a relevant and proper factor to consider pursuant to 23 Pa.C.S. § 3502(a)(1) (listing "length of the marriage" as a relevant factor to consider for equitable distribution).  Based on the foregoing, it was reasonable for the trial court to create an equitable distribution scheme that would put the parties back into their respective financial positions prior to the marriage.  Such a scheme required Husband to reimburse Wife the amount of money she transferred to him during the marriage.  Accordingly, Husband is not entitled to relief on these issues.

We now turn to Husband's final issue, where he argues the trial court erred by assigning the marital home a value of zero.  Husband argues that it has $51,000 in negative equity, which should have been taken into account by the trial court. Husband's Brief at 19.

The trial court declined to grant Husband relief on this issue, and offered the following analysis.

> While it is uncontroverted that Husband purchased the residence for $310,000 and it had an apparent fair market value of $209,000 at the time of these proceedings, Husband was awarded and retained sole possession of the residence.  He was therefore not awarded any credit in our equitable distribution determination for the purported negative equity in accordance with standard Bucks County practice.

Decision and Order, 11/20/2014, at 5.

The trial court opined further:

Significantly, Husband resides in the house and wishes to remain there. The house is currently used as a two-family residence. Husband's parents, his younger brother, his sister, and his sister's two children reside in one part of the house, and Husband resides in the other part. Prior to their separation, Wife had resided with Husband in the downstairs part of the house.

Trial Court Opinion, 1/15/2015, at 8. The trial court went on to explain how none of these individuals pays any rent or contributes economically to the household. Moreover, Husband has "benefitted by using [his sister's] children to claim an earned income credit on those tax returns." *Id*. The trial court further noted that it was Husband's choice to remain in the home, and although "the house currently does not have equity, the mortgages are being paid, and … Husband continues to enjoy the benefits of remaining in the home." *Id*. at 9.

Based on the foregoing, we discern no abuse of discretion in the trial court's assigning a zero value to the home. Husband and several members of his family live in the home, which benefits Husband, and could benefit Husband even more if he chose, as none of these individuals pays rent. For the foregoing reasons, we affirm the decree of the trial court.

Decree affirmed.[4] Petition for leave to file cross appeal *nunc pro tunc* denied.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 9/28/2015*

---

[4] Husband has filed several motions to continue oral argument on this case. On June 24, 2015, Husband's counsel filed a motion for continuance of the oral argument scheduled for June 25, 2015. That motion was granted. On July 7, 2015, this Court sent notice that argument would take place on August 19, 2015. On August 13, 2015, Husband's counsel filed a motion for a continuance of the oral argument because on the basis that he had a pre-paid vacation already scheduled for August 19, 2015. On August 13, 2015, this panel denied the motion.

On August 18, 2015, Husband's counsel again asked for a continuance of the August 19, 2015 argument. On August 19, 2015, Husband's counsel sent a letter to this Court informing it that he did, in fact, go on vacation. This Court entertained argument from counsel for Wife. To the extent this latest motion for continuance is still pending, we deny it as moot.