J-A29022-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MICHAEL T. MCGRATH, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| VIRGINIA M. MCGRATH, | |
| Appellant | No. 1913 WDA 2014 |

Appeal from the Order October 23, 2014
In the Court of Common Pleas of Erie County
Civil Division at No(s): 13760-2009

BEFORE:  FORD ELLIOTT, P.J.E., BOWES AND MUSMANNO, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED MARCH 18, 2016**

Virginia M. McGrath ("Wife") appeals from the October 23, 2014 equitable distribution order that addressed her exceptions to the domestic relations master's report and divided the marital estate that she accumulated with Michael McGrath ("Husband").  We affirm.

Husband and Wife married on July 2, 1994 and separated on August 1, 2009.  Both were previously married.  Wife has an adult child from her earlier marriage.  Husband has no children.

Soon after Husband and Wife married, the couple purchased a building that was divided into an existing pizza restaurant, Mister Pizza, and two apartments.  Wife utilized the proceeds of her property settlement from her first marriage to pay the down payment for the pizza business and the

building. Husband reimbursed Wife $2,500 towards the purchase of the business and paid the balance of the mortgage in monthly installments. Both parties are named on the deed to the property. The couple operated Mister Pizza on the ground floor, lived in the second floor apartment, and rented the other ground-floor unit for either $550 or $600 per month. Even after the date of separation, they reported the pizza business and the residential rental unit as partnership income on their joint tax returns.

Husband is a high school graduate with several college credits. Wife failed to graduate high school, and it is unclear whether she attained a GED. While the couple operated Mister Pizza jointly, Husband also engaged in outside employment as an insurance salesman and financial advisor. Husband initially worked at UBS Paine Webber, but during August 2007, he accepted a position with Morgan Stanley and Company ("Morgan Stanley"). As a perquisite of employment, Morgan Stanley provided Husband a loan in the amount of $185,600. Husband issued a promissory note committing to repay the amount in seven yearly installments. During 2008, the firm issued another loan totaling $58,000, and Husband executed a second promissory note establishing a five-year repayment schedule. Using loan proceeds, Husband opened an investment account ("AAA account") and used portions of the loans to pay marital expenses, cover investment losses, and satisfy the repayment schedules.

On August 1, 2009, the parties separated; however, Husband remained in the marital home until November when he purchased his own residence. On August 27, 2009, Husband filed a complaint in divorce that invoked the no-fault provisions in § 3301(c) of the Divorce Code, 23 Pa.C.S. §§ 3101-3904. Each of the parties filed affidavits of consent to the divorce.

Husband continued to work for Morgan Stanley until he was terminated from employment during November 2011 as a result of firm-wide streamlining. Husband has continued to repay the loan proceeds to his former employer. Following his discharge, Morgan Stanley renegotiated the repayment terms so that between February 2012 and December 2014, Husband would remunerate $2,503.81 each month. He earned approximately $71,000 during 2012, and, at the March 2014 master's hearing, Husband testified that he earned approximately $56,000 per year as a financial advisor and insurance salesman with Mass Mutual.

Meanwhile, following the dissolution of the marriage, Wife continued to operate Mister Pizza, maintain the rental unit, and reside in the marital apartment. She stopped operating Mister Pizza during 2012. She attempted to sell that business for $25,000 but the buyer defaulted after one year of operation. Thereafter, she rented the shop and equipment to Yum Yum Pizza for $1,000 per month. Husband paid the taxes and utilities on the property and divided with Wife the proceeds of the jointly-filed federal

income tax return. He also paid to her approximately $8,600 for maintenance of the property and for discretionary spending.

Wife did not share the proceeds of the pizza shop and rental income with Husband or contribute to the repayment of the Morgan Stanley loan. Despite receiving an equal portion for the joint tax refunds between 2009 and 2011, Wife failed to contribute to the couple's $7,000 tax liability during 2012. She is currently unemployed and lives primarily from rental income.

On July 25, 2013, Husband filed a motion for the appointment of a master to address the divorce and distribution of marital property. On July, 31, 2013, the trial court appointed Ralph Riehl III, Esquire, as the domestic relations master. The parties filed their respective inventories, appraisals, and income/expense statements, and they scheduled a status conference for December 13, 2013. That hearing was continued, when Wife's counsel withdrew from representation. Following the completion of the rescheduled status conference, on January 17, 2014, the master issued a letter scheduling an evidentiary hearing for March 31, 2014. The letter directed that pretrial statements must be filed on or before March 17, 2014. The master cautioned that, pursuant to Pa.R.C.P. 1920.33(b) and (d), absent good cause shown, the failure to timely file a pretrial statement would result

in the preclusion from presenting evidence during the master's hearing.[1]
Husband filed a timely pretrial statement. Wife submitted her pretrial
statement three days late.

During the ensuing master's hearing, Husband testified on his own
behalf and introduced several exhibits. Wife also testified. However, when
she attempted to introduce evidence, Husband invoked Rule 1920.33 and
objected to its admission. Following a brief argument on the record and
consideration of Wife's justification for the delay, *i.e.*, counsel was out of
town on the preceding business day and had difficulty obtaining the
necessary information from Wife, the master decided to withhold its ruling
so that Wife could compile an evidentiary record. During Wife's testimony,
Husband raised additional objections to references to other documents that
she had not identified in the untimely pretrial statement. The master
sustained those objections.

The master's report and recommendation was filed on May 9, 2014.
The report included a thorough review of the facts and procedural history.
Ultimately, the master fashioned a recommended order that divided the net

_____

[1] Notwithstanding Husband's contention that the master filed the January
17, 2014 letter, it is not recorded on the list of docket entries. However,
since the trial court attached the letter to the October 23, 2014 opinion as
Exhibit A, the document was included in the certified record transmitted to
this Court on appeal. For the sake of clarity, we highlight that the master
filed and served **formal** notice of the evidentiary hearing separately. That
notice, which is included in the record, was served by first-class mail on
February 5, 2014.

marital assets 65%-35% in favor of Wife. The master also determined that, excluding the real property, Wife had received the benefit of the marital property totaling $124,246 while Husband had a deficit of $30,748.71, including the repayment of the balance owing on the promissory notes to Morgan Stanley. The result of the recommended equitable distribution order was that Husband would be awarded $67,051.29 from the marital estate, which would be funded by his receipt of the real estate and Wife's payment of $10,000.

As to the sanctions for Wife's late pretrial statement, the master precluded Wife's evidence in accordance with Rule 1920.33, but determined that the impediment did not affect the outcome of his decision. Stated simply, the master opined that, since Wife's testimony lacked specificity and concerned facts that occurred fifteen years prior to the parties' separation, *i.e.* her significant contribution toward the down payment for the marital home, her evidence would not have altered his consideration of the factors relevant to equitable distribution under 23 Pa.C.S. § 3502(a), which we reproduce *infra*.

Wife filed timely exceptions to the master's report and recommendation. She challenged the master's determinations regarding, *inter alia*, whether: (1) Husband benefited from the continued operation of the pizza shop by realizing post-separation tax benefits; (2) the Morgan Stanley loans were marital debt; (3) Wife was liable for one-half of the

monthly rental value of the marital unit in which she continued to reside in post-separation; (4) Husband, rather than Wife, should retain the marital residence; and (5) the master improperly sanctioned Wife for the untimely filing of her pretrial statement by precluding her from introducing evidence under Rule 1920.33.

Following briefing and oral argument, on October 23, 2014, the trial court entered an opinion and order that granted relief, in part, denied relief, in part, and fashioned the equitable distribution order so that Wife received 75% of the marital estate. Specifically, it awarded Wife the marital residence with a stipulated value of $87,800, a $22,767 annuity, and her IRA worth $7,774. Wife retained her 1993 BMW appraised at $4,000, the proceeds of an IRS refund in the amount of $6,593, and the personal property that she currently possessed.

Husband received, *inter alia*, $21,912 in the proceeds from the unconsummated sale of Mister Pizza and the post-separation rents from the restaurant. He was awarded the post-separation proceeds from the residential rental, $30,600, and a credit for $10,400, representing approximately one-half of the fair rental value of Wife's continued utilization of the marital residence.[2] He was also granted $10,000 for the value of the

_____

[2] We observe that the equitable distribution order described the credit as representing a credit for post-separation property taxes. However, in disposing of Wife's exceptions to the master's report and in addressing her

*(Footnote Continued Next Page)*

kitchen equipment in the pizza shop. Although the trial court sustained the master's finding that the loans secured by promissory notes were a marital debt, it allocated to Husband the full responsibility for repayment totaling $217,085.71 as well as the $10,000 balance on the marital credit card as of the date of separation. As it relates to Wife's exception challenging the master's decision to ignore her evidence as a sanction for filing an untimely pretrial statement, the trial court rejected Wife's contention. Succinctly, it determined, at least implicitly, that Wife failed to establish good cause for her tardiness under Rule 1920.33. The court also highlighted that Wife's evidence would not have altered the master's proposed distribution of the marital estate. Thus, that exception was dismissed.

On appeal, Wife presents four questions for our review:

1. Did the court below err in not allocating the full amount of loan funds to [H]usband which he held and retained exclusively and ultimately to repay a large loan, resulting in a false imbalance in the distribution of assets and debts?

2. Did the court below err in awarding Husband credit for the two joint business ventures of the parties which he continued to use and benefit after the marital separation?

*(Footnote Continued)* ─────────────────

Rule 1925 Statement, the trial court considered it a credit to the spouse dispossessed of the marital unit and applied the legal principles relevant to that credit. ***See*** Trial Court Opinion, 10/23/14, at 17-19; Rule 1925(a) Opinion, 1/20/15, at 13-14. It is inconsequential that the trial court misidentified the credit in the equitable distribution order because the court's rationale for sustaining the credit, *i.e.*, Husband's payments of taxes, maintenance, and expenses, subsumed the post-separation payment of real estate taxes.

3.    Did the court below err in assessing Wife a debt to Husband for the marital living unit under the circumstances?

4.    Did the court below err in affirming the Master's determination to disregard Wife's testimony and exhibits because her Pretrial Statement as the responding party was filed [three] days [late] with no showing of prejudice?

Wife's brief at 5.

The following principles guide our review.

> Our standard of review in assessing the propriety of a marital property distribution is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence.
>
> *McCoy v. McCoy*, 888 A.2d 906, 908 (Pa.Super. 2005) (internal quotations omitted). When reviewing an award of equitable distribution, "we measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." *Hayward v. Hayward*, 868 A.2d 554, 559 (Pa.Super. 2005).

*Smith v. Smith*, 904 A.2d 15, 18 (Pa.Super. 2006).  In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole.  *Morgante v. Morgante*, 119 A.3d 382, 387 (Pa.Super. 2015.).

Section 3502(a) of the Divorce Code outlines the factors relevant to a trial court's equitable distribution of marital property.  Those considerations include:

(1) The length of the marriage.

(2) Any prior marriage of either party.

- 9 -

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

(10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S. § 3502(a), (1)-(11).

The crux of Wife's first argument is that the trial court erred in deeming the Morgan Stanley loan to be marital debt. Wife agrees with the

trial court's decision to encumber Husband with repaying the entire loan debt. However, she contends that by incorporating the $217,085 loan balance into the marital estate, the court improperly deflated the marital estate by that amount, which, in turn, reduced the value of her 75% share. She contends that the loan proceeds must either be excluded from the marital estate entirely or included in the estate with both the proceeds and repayment assessed against Husband. The point of Wife's contention is that Husband maintained exclusive control over the loan proceeds and utilized less than 1% of the money for marital expenses.

Initially, we observe that "marital property'" includes "all property acquired by either party during the marriage and the increase in value of any nonmarital property acquired [prior to the marriage or in exchange for property acquired prior to the marriage]." *Id*. at 23 Pa.C.S § 3501(a), (1) and (3). Herein, it is beyond argument that the loan proceeds that Husband acquired during the marriage and that he used, at least to some degree, to satisfy marital expenses, is marital property. *See* N.T., 3/32/14, at 47. Specifically, while Husband could not pinpoint the exact expenses that he paid from the loan, he testified, "I know that I did tap into it a bit . . . I could not tell you if it was five hundred, a thousand, or two thousand [dollars]. I couldn't tell you what [the amount] is." *Id*. at 52. Husband did recall, however, that the couple used some of the money to go to a Disney theme park, as well as other destinations, with their grandson. *Id*. at 51.

Although the certified record does not indicate the total amount of marital expenses that Husband paid from the Morgan Stanley loan, mindful of our deferential standard of review, we find no basis to disturb the trial court's decision to reject Wife's attempt to diminish the contributions of the loan proceeds to the marital estate as inconsequential.

Further, while Husband controlled the money from the loan, which Wife believed to be a signing bonus, he used it to open the AAA investment account. Significantly, unlike the facts of the case that Wife relies upon in her brief, Husband did not transfer the money to a sole proprietorship in which Wife had no interest.[3] **Compare McNaughton v. McNaughton**, 603 A.2d 646 (Pa.Super. 1992) (holding trial court properly assigned debt to husband's business rather than marital estate). The fact that Husband did not consult with Wife before selecting the individual investment opportunities under the AAA account did not render that money a non-marital asset. As the loans were acquired during the marriage and used for marital purposes prior to separation, they were properly included in the marital estate. **See**

_____

[3] It is unclear whether Husband used money from the AAA account to fund a $30,000 down payment on a home he purchased post-separation during 2009. However, to the extent that the money was from marital funds, Husband repaid $25,000 of that amount to Morgan Stanley directly upon the subsequent sale of the home. While Husband is undoubtedly liable for the remaining $5,000, the shortfall is not significant enough to upset the trial court's equitable distribution scheme in light of the fact that Husband is solely responsible for the loans' repayment under the equitable distribution order.

23 Pa.C.S. § 3501(a)(1). The trial court reached this precise conclusion based upon the evidence adduced during the master's hearing and included in the certified record. Thus, no relief is due.

Moreover, notwithstanding Wife's protestations, the trial court did not err in declining to increase the value of the marital estate by the amount of the loan proceeds owed at the time of separation. Wife's argument is misguided. The money owed to Morgan Stanley is a debt rather than an asset. While any income produced as a result of Husband's investments using the corpus of the loan is indisputably a marital asset, the loan itself is no less of a marital debt than any mortgage, car note, or consumer credit card secured during the marriage. Hence, it would be improper to inflate the marital estate by an amount that is commensurable with the loan balance. Instantly, the Morgan Stanley loan represents $217,085.71 of marital debt, the repayment of which the trial court reasonably assessed against Husband. As the trial court's decision is within its discretion and free of legal error, we will not disturb it.

Next, Wife argues that the trial court erred in awarding Husband credit for the value of the post-separation income Wife retained from the first floor rental unit and the sale and/or rent of the pizza restaurant. Wife asserts that since Husband benefited from these ventures by receiving tax advantages based upon their joint filing status, he is not entitled to post-separation proceeds through December 2012, the final year the parties filed

a joint tax return. Wife frames the crux of her contention as follows, "Husband would certainly have incurred a much larger income tax obligation had he filed separately and/or without including the expenses and losses attributable to the [pizza shop and rental unit], given his much larger income, as Wife's share of income was consistently miniscule." Wife's brief at 18. Wife contends that she retained the meager income from the rental unit and the proceeds of the failed sale of the pizza shop in lieu of spousal support. Hence, Wife reasons, while she consumed the rents and income from the pizza shop in order to survive, benefits from the two enterprises inured to Husband nevertheless. Thus, Wife argues that the trial court erred in carving from these incomes a distribution to Husband because between the date of separation and December 2012, the parties shared different aspects of the two ventures. Wife's arguments are unconvincing.

As the monthly rent and the income from the pizza shop were marital property, they were subject to equitable distribution. Husband was entitled to at least the value of his share of the proceeds that Wife retained. Additionally, we observe, that while Husband did, in fact, benefit from the jointly filed tax return, on at least three occasions, he transferred to Wife her one-half share of the substantial income tax refunds, although he deducted Wife's share of the property taxes from the refund for 2011. Thus, the benefit that the parties realized from their joint filing status was apportioned equally between them. In addition, Husband provided Wife with

approximately $8,600 during 2012 for maintenance of the property and her discretionary spending. Given these facts, we cannot agree with Wife's assertion that the trial court erred in awarding to Husband the proceeds from the rental unit and pizza shop. Stated plainly, the instant record will not sustain Wife's complaint that the trial court's equitable distribution scheme is unreasonable because it requires her to relinquish post-separation payments that she has retained since the date of separation.

Wife's third issue pertains to the trial court's assessment of one-half the rental value of the marital apartment since the date of separation. Generally, Pennsylvania law provides that, absent an equitable defense, a dispossessed spouse is entitled to a credit against the spouse in exclusive possession for the fair rental value of the marital residence. **See Lee v. Lee**, 978 A.2d 380 (Pa.Super. 2009) (quoting **Trembach v. Trembach**, 615 A.2d 33 (Pa.Super. 1992) ("the general rule is that the dispossessed party is entitled to a credit for the fair rental value of jointly held marital property against a party in possession of that property, provided there are no equitable defenses to the credit.")). As we reiterated in **Lee**, **supra**, "The basis of the award of rental value is that the party out of possession of jointly owned property . . . is entitled to compensation for her/his interest in the property." **Id**. (citation omitted).

Wife stresses that the rental credit is not mandatory and argues that the trial court erred in applying the credit under the facts of the case at bar

in light of the disparity between the parties' financial circumstances. She relies upon our holding in **Middleton v. Middleton**, 812 A.2d 1241, 1248 (Pa.Super. 2002) (*en banc*), where we affirmed the trial court's decision to forego the credit because it "would clearly not effectuate economic justice between the parties." We highlighted that the dispossessed spouse in that case, a retired professional sports referee, earned significantly more than the wife, and even though he paid voluntary payments to the wife that were outside of the equitable distribution scheme, the credit would be burdensome upon the wife despite her award of sixty percent of the marital estate. Essentially, we deferred to the trial court's judgment. We reasoned that, since the distribution order reflected "a considered weighing of the economic standings and needs of the parties" and evinced consideration of the relevant statutory factors, the trial court's decision to forego the credit was a reasonable exercise of discretion. **Id**.

Unlike the facts of **Middleton**, however, instantly Husband is not as financially secure as the dispossessed spouse in **Middleton**. Thus, although the husband in that case could sustain the financial blow associated with receiving only 40% of the marital estate while still providing voluntary support payments, Husband cannot endure that responsibility. He earns between $54,000 and $71,000 per year as a financial advisor and insurance salesman. While he retained his IRA and annuity valued at $36,756 and $30,541 at the date of separation, he is not wealthy by any definition.

Husband contributed voluntarily to the post-separation real estate taxes, utilities, and other property expenses while Wife remained in the home rent free, and he is solely responsible for the marital debt associated with the Morgan Stanley loan. Thus, unlike the dispossessed husband in **Middleton**, Husband, herein, lacks the financial assets to support the deviation from the general principle that a disposed spouse is entitled to one-half of the rental value of the marital home. As the trial court considered the relevant factors in declining the credit,[4] and its decision weighed the economic standings and needs of the parties, there is no basis to find an abuse of discretion.

Wife's final issue concerns the master's preclusion of her evidence as a sanction for the untimely filing of her pretrial statement. Relying upon our

---

[4] In **Trembach**, **supra** at 87-88 (citations omitted), we enumerated the following relevant considerations for determining whether to apply the rental credit:

> First, the general rule is that the dispossessed party is entitled to a credit for the fair rental value of jointly held marital property against a party in possession of that property, provided there are no equitable defenses to the credit. Second, the rental credit is based upon, and therefore limited by, the extent of the dispossessed party's interest in the property. Generally, in regard to the marital home, the parties' have an equal one-half interest in the marital property. It follows, therefore, that in cases involving the marital home that the dispossessed party will be entitled to a credit for one-half of the fair rental value of the marital home. Third, the rental value is limited to the period of time during which a party is dispossessed and the other party is in actual or constructive possession of the property. Fourth, the party in possession is entitled to a credit against the rental value for payments made to maintain the property on behalf of the dispossessed spouse.

decision in **_Estate of Ghaner at al v. Bindi_**, 779 A.2d 585 (Pa.Super. 2001), Wife contends that the wholesale preclusion of evidence was too severe of a sanction insofar as the prejudice to Husband as a result of her three-day delay was insignificant. In **_Estate of Ghaner_**, this Court reversed the trial court's decision to preclude a plaintiff from introducing exhibits or testimony in a wrongful death action after she failed to file a pre-trial statement pursuant to Pa.R.C.P. 212.2(a) and (c), an analogous rule that is applicable to civil jury trials. Stated simply, we reasoned that the preclusion of evidence in that case was "tantamount to a dismissal of [the] action." **_Id_**. at 589. After considering the relevant facts of that case, we deemed the sanction too severe of a punishment for the plaintiff-appellant's misstep and, therefore, determined that the trial court committed an abuse of discretion in imposing it. **_Id_**. at 590.

Instantly, unlike the situation in **_Estate of Ghaner_**, the sanction that the master imposed was not tantamount to a dismissal of Wife's case. In fact, the omissions had no effect on the fact-finder's consideration of the evidence before it. Wife identifies only three points of evidence that she believes would have altered the outcome had it been considered. First, Wife stresses that she proffered evidence relating to her payment of the mortgage on the marital residence during 2004, using a low-interest credit card, which she paid in full prior to the 2009 separation. Additionally, Wife contested Husband's assertion that she had engaged in an extramarital affair

prior to the parties' separation. Finally, Wife refuted Husband's contention that he paid for the couple's vacations with money from the AAA investment account. None of this evidence, if believed by the fact-finder would have altered the outcome of the hearing.

First, the evidence concerning her payment of the mortgage is stale as Wife obtained the credit card during 2004 and paid the balance prior to the date of separation. Likewise, the reference to her extramarital affair was irrelevant to equitable distribution pursuant to § 3502(a), and therefore her denials were equally immaterial. Finally, to the extent that Wife sought to dispute Husband's assertion that he paid for family vacations from the Morgan Stanley loan, the fact finder made a credibility determination in Husband's favor, concluding that Husband paid some portion of the expense from the marital account. Thus, as the master and the trial court both indicated in rejecting Wife's claim of prejudice stemming from the Rule 1920.33 sanction, the testimony and exhibits that Wife proffered during the hearing would not have altered the equitable distribution scheme. Accordingly, we conclude no relief is due.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/18/2016