J-S30019-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CASSANDRA L. LEONARD | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL E. LEONARD | : | No. 618 MDA 2021 |

Appeal from the Order Entered April 22, 2021
In the Court of Common Pleas of Lebanon County Civil Division at No(s):
1994-20644

BEFORE:   BENDER, P.J.E., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.:              **FILED:  NOVEMBER 16, 2021**

Cassandra L. Leonard (Wife) appeals from the order entered in the Lebanon County Court of Common Pleas, which granted a divorce from Michael E. Leonard (Husband) and resolved the parties' exceptions to the Report of the Special Master relating to the equitable distribution of their marital assets. On appeal, Wife argues the trial court abused its discretion by:  (1) determining Wife would not be required to pay income taxes on her Social Security disability (SSD) benefits; (2) dividing the marital estate 52% to 48% in favor of Husband; (3) valuing Husband's deferred compensation plan; and (4) re-valuing Husband's State Employee Retirement System (SERS) retirement account, *sua sponte*.  For the reasons below, we affirm.

## I.  FACTS & PROCEDURAL HISTORY

---

[*] Retired Senior Judge assigned to the Superior Court.

On October 14, 2015, Wife filed a complaint in divorce, seeking the dissolution of the parties' 30-year marriage and the equitable distribution of their marital property. **See** Wife's Complaint in Divorce, 10/14/15. Nearly four years later, on October 4, 2019, Wife moved for the appointment of a Special Master, and the trial court promptly appointed Keith Kilgore, Esq. At a November 13th prehearing conference, the parties agreed, *inter alia*, that because they both consented to the divorce, the only issue for the master was the equitable distribution of marital assets, and "the date for the evaluation of assets [was] September 30, 2019[.]" **See** Letter from Special Master Kilgore to counsel, 11/19/19, at 2 (unpaginated). A Special Master's hearing was conducted over two days — January 9 and February 13, 2020.

On October 13, 2020, the Special Master filed a report, which included the following relevant, undisputed findings of fact. Husband and Wife were married on August 17, 1985; it was the first marriage for both parties. Special Master's Report, 10/13/20, at 2. At the time the Report was filed, Wife was 55 years old and Husband was 58 years old. **Id.** at 4. The parties have two minor children, of whom they share physical and legal custody. **Id.** at 3-4. Husband is employed as a firefighter by the Commonwealth of Pennsylvania, and works part-time as an instructor at two community colleges. **Id.** at 7. He earned approximately $72,0000 annually in 2018 and 2019. **Id.** at 8.

During the marriage, Wife obtained a bachelor's and master's degree in nursing, and worked as a certified registered nurse anesthetist. **Id.** at 5. After the birth of their second child in 2010, Wife worked part-time,

approximately 30 hours per week, earning $80 per hour for an annual salary of nearly $120,000. *Id.* at 6. However, as a result of a medical condition,[1] Wife stopped working in March of 2017. *Id.* She receives non-taxable, disability benefits in the amount of $6,300 per month from a private policy with New York Life Insurance, which will continue until she reaches the age of 62. *Id.* at 6-7. In addition, in June of 2020, Wife was awarded SSD benefits, retroactive to March of 2017. *Id.* at 6. However, her "private disability benefits will be reduced dollar for dollar for any amounts [she] receives from Social Security so she will never receive more than $6,300.00 per month." *Id.* In March of 2030, Wife will also be entitled to receive a monthly pension. *Id.* at 7.

The Special Master determined the parties separated on October 14, 2015, when Wife filed the divorce complaint. Special Master Report at 3, 4. Nevertheless, the parties continued to reside in the marital home until Husband moved out in mid-October of 2019.[2] *Id.* As noted *supra*, the parties

_____

[1] Wife has "a benign growth inside [her] skull" that she expects to be treated by radiation therapy in the future. N.T., 1/9/20, at 11. She testified that she takes "medication for the side effects of the initial intervention[;]" those side effects include "seizures[,] migraines[,] and vision problems." *Id.* at 11-12. Although she is unable to work, Wife admitted her doctors have given her no restrictions on driving, or performing household chores or childcare. *Id.* at 54. However, Wife maintains she is "not physically able to do things as quickly or as efficiently as [she] used to." *Id.*

[2] Husband explained that during that four-year period, he "was sleeping on the sofa in the living room." N.T., 2/13/20, at 120.

agreed that the date for the valuation of their assets would be September 30, 2019. *Id.* at 5.

After considering the statutory factors relevant to the equitable distribution of property,[3] the Special Master recommended that the marital assets be divided 52% for Husband and 48% to Wife. *See* Special Master's Report at 13, 21-26. Both Wife and Husband filed timely exceptions to the Report. Wife raised five exceptions, asserting the Special Master erred in: (1) valuing Husband's deferred compensation plan at $383,292.91; (2) providing Husband a 25% tax credit of his retirement benefits; (3) allocating 52% of the marital assets to Husband; (4) failing to provide guidelines for the children's educational investment plans; and (5) determining Wife will not have to pay taxes on her SSD income. Wife's Exceptions to the Report & Recommendation of the Special Master, 10/28/20, at 1-2 (unpaginated). Husband presented one exception: Whether the Special Master erred in awarding Wife 48% of the marital assets. Husband's Exceptions to Report & Recommendations of the Special Master, 11/5/20. On November 18, 2020, the Special Master filed a Supplemental Report, which corrected the number of the exhibit, detailing the value of Husband's deferred compensation plan. *See* Supplemental Special Master's Report, 11/18/20, at 1.

On April 22, 2021, the trial court entered an order, and concomitant opinion, that disposed of the parties' exceptions to the Special Master's Report

---

[3] *See* 23 Pa.C.S. § 3502(a)(1)-(11).

and declared the parties "divorced from the bonds of matrimony[.]" Order, 4/22/21, at 1-5. Specifically, the court: (1) overruled both parties' challenges to the distribution scheme; (2) sustained in part and overruled in part Wife's challenge to the valuation of Husband's deferred compensation plan — concluding the marital value of the plan as of September 30, 2019, was $452,064.15; (3) sustained in part and overruled in part Wife's challenge to Husband's tax credit on his retirement— the court determined, *sua sponte*, that the marital value of Husband's retirement account was $492,512.88; (4) sustained Wife's exception regarding the children's educational investment plans — the court determined the plans were non-marital and belonged to the children; and (5) overruled Wife's exception to the Special Master's finding that she will not have to pay taxes on her SSD income. ***See id.*** at 1-3. Wife filed this timely appeal.[4]

## II. Issues on Appeal

Wife presents four issues for our review:[5]

---

[4] Wife complied with the trial court's directive to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Upon receipt of Wife's five-issue statement, the trial court entered an order noting that Wife's first four issues were addressed in its April 21, 2021, opinion. Order, 6/3/21. Wife's fifth issue questioned an apparent discrepancy in the trial court's opinion. ***See*** Wife's Concise Statement of Errors Complained of on Appeal, 6/2/21, at 1-2 (unpaginated). In its June 3rd order, the court acknowledged the discrepancy, and clarified the amount Wife owed Husband. ***See*** Order, 6/3/21. Wife does not address that fifth issue in her brief.

[5] We have reordered Wife's issues for ease of disposition.

A. Did the lower court abuse its discretion when it determined that [Wife will] not be required to pay income taxes on her [SSD] benefits?

B. Did the lower court abuse its discretion when it awarded [Wife] with 48% of marital assets and [Husband] with 52% of the marital assets?

C. Did the lower court abuse its discretion when it valued [Husband's] Deferred Compensation Plan at $452,064.15?

D. Did the lower court abuse its discretion when it *sua sponte* determined a value for Husband's SERS Retirement Account when [Husband] never raised this issue in his exceptions?

Wife's Brief at 8.

When reviewing an order of equitable distribution, we must bear in mind the following:

> [A] trial court has the authority to divide the award as the equities presented in the particular case may require. "Our scope of review in equitable distribution matters is limited. Awards of alimony, counsel fees, and property distribution are within the sound discretion of the trial court and will not be disturbed absent an error of law or abuse of discretion."

**Cook v. Cook**, 186 A.3d 1015, 1019 (Pa. Super. 2018) (citations omitted). Furthermore, "[w]hen reviewing an award of equitable distribution, 'we measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.'" **Smith v. Smith**, 904 A.2d 15, 18 (Pa. Super. 2006) (citation omitted).

### III. Taxes on SSD Benefits

Wife argues the trial court abused its discretion when it determined she would not be required to pay income taxes on her SSD benefits.[6] Wife's Brief at 31. She asserts that the determination whether such benefits are taxed "depends on the benefit recipient's combined monthly income." *Id.* When a single benefit recipient has a combined monthly income more than $34,000 annually, 85% of their SSD benefits are taxed. *Id.* at 31-32. Wife maintains this "[c]ombined income" is derived from the recipient's "adjusted gross income plus any non[-]taxable interest plus half of the awarded SSD benefits." *Id.* at 32. Because her "combined income will be more than $34,000 annually[,]" Wife contends she will have to pay taxes on her SSD benefits. *Id.*

Although the trial court agreed Wife **may** have to pay taxes on her SSD benefits at some point in the future, it found that, for purposes of the equitable distribution award, this future possibility was irrelevant. The court opined:

> In considering the economic circumstances of the parties, including federal, state, and local tax ramifications, the Special Master found that Wife's New York Life Disability benefits will end in seven years when she turns 62 and that there are no tax consequences for Wife's [SSD] payments.
>
> While Wife's New York Life private disability is not taxable income, any money she withdraws from her retirement accounts will be taxable income. For her [SSD] to be taxed at 85%, Wife would need a combined income of more than $34,000. Half of her

---

[6] We address this issue first because Wife relies on this argument in support of her contention that the trial court abused its discretion in considering the Section 3502 factors for equitable distribution. **See** Wife's Brief at 20-21, 25-27.

$33,013.20 [SSD[7]] is $16,506.60. $34,000 — [$]16506.60 is $17,493.40. If Wife receives more than $17,793.40 per year from her retirement accounts and non[-]taxable interest, she will be taxed on 85% of her [SSD].

However, Wife is receiving **non-taxable** private disability until an age when she could begin receiving Social Security retirement benefits, although at the reduced rate. Husband would be subject to the same taxes on Social Security retirement benefits if he receives money from his retirement accounts over the $34,000 threshold when he retires. The fact that Husband continues to have to pay federal, state, and local income taxes until he retires and Wife does not weighs . . . slightly in his favor.

Trial Ct. Op. at 30-31 (emphasis added and footnote omitted).

Upon our review, we detect no abuse of discretion on the part of the trial court. In its report, the Special Master explained that the $34,000 "combined income" threshold, for purposes of taxing SSD benefits, refers to "wages, self-employment, interest, dividends, and other **taxable** income which **must be reported** on [a] tax return[.]" Special Master's Report at 6-7 (emphases added).[8] Wife does not dispute the fact that her private disability payments are non-taxable. **See** N.T., 1/9/20, at 13. Thus, unless her other sources of income are substantial, and result in a "combined income" above the $34,000 threshold, Wife will not be required to pay taxes on her SSD benefits. Wife fails to identify any sources of income **other than** her non-taxable, private disability benefits. Thus, we conclude the trial court did not abuse its discretion when it determined Wife has no taxable income until she

---

[7] Appellant received $2,751.10 per month in SSD benefits; thus, her yearly SSD income is $33,013.20. **See** Trial Ct. Op., 4/22/21, at 12.

[8] **See** https://www.ssa.gov/benefits/retirement/planner/taxes.html.

reaches retirement age, while Husband must pay income taxes during that same time period.

### IV. Division of Marital Assets

Next, Wife contends the trial court abused its discretion when it awarded Husband 52% of the marital assets, and awarded her only 48% of the assets. **See** Wife's Brief at 16. She insists she "should have been awarded a higher percentage[,]" primarily because of her "significant medical condition." **Id.** at 17.

An equitable distribution award is guided by Section 3502 of the Divorce Code. **See** 23 Pa.C.S. § 3502. In determining the division of assets "the trial court must consider, at a minimum, the eleven factors set forth in [Section] 3502," which relate to "the relative economic positions of the parties and the nature of the parties' relationship." **Gates v. Gates**, 933 A.2d 102, 105 (Pa. Super. 2007). The weight assigned to each factor is within the trial court's discretion, and we will not reweigh them on appeal. **Busse v. Busse**, 921 A.2d 1248, 1260 (Pa. Super. 2007). Upon our review of an equitable distribution award, "we look at the distribution as a whole, in light of the court's overall application of the [Section 3502(a)] factors[;]" absent an abuse of discretion, the order must be upheld. **Lee v. Lee**, 978 A.2d 380, 383 (Pa. Super. 2009) (citation omitted).

Section 3502 lists eleven factors a trial court must consider when determining the equitable division of marital property:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

(10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S. § 3502(a)(1)-(11).

Here, the trial court agreed with the weight the Special Master gave to each of the Section 3502 factors. *See* Trial Ct. Op. at 11-18. Accordingly, the court found factors 1, 2, 5, 8, 9, and 11 were neutral, and did not weigh

in favor of either party. ***See id.*** at 11, 14-18. Further, the court determined factors 6 and 7 weighed in favor of Wife. ***See id.*** at 14-15. Wife challenges only the three factors the trial court weighed in favor of Husband — factors 3, 4, and 10. ***See*** Wife's Brief at 19-23, 25.

Factor 3 requires the court to consider, *inter alia*, the health, sources of income, and employability of the parties. Wife insists the trial court abused its discretion when it weighed this factor in favor of Husband because the court "failed to appropriately consider [her] serious medical condition." Wife's Brief at 19. She emphasizes that she is 55 years old, unemployed, and receives disability payments. ***Id.*** Wife maintains she will never be able to return to work, and her private disability benefits will cease when she reaches the age of 62. ***Id.*** at 20. She further claims she will have to obtain medical insurance, which will be costly, and will eventually be required to pay taxes on her SSD payments.[9] ***Id.*** at 20-21. Wife argues, conversely, Husband works full-time as a firefighter and part-time as an instructor. ***Id.*** at 21. He is in good health and "has the potential to continue working for a lengthy period of time[,]" which will also permit him to "increase the value of his retirement." ***Id.*** Thus, Wife insists this factor weighs heavily in her favor: "Wife's health, inability to work, and significant need in the coming years should be given great weight." ***Id.***

_____

[9] As discussed ***supra***, we conclude the possibility that Wife's SSD payments may be taxed as some time in the future is irrelevant for purposes of the equitable distribution award.

With respect to the fourth factor — the contributions of one party to the education, training, or increased earning power of the other — Wife argues the trial court abused its discretion when it weighed this factor slightly in Husband's favor. Wife's Brief at 22. Although she acknowledges she obtained both her bachelor's and master's degrees during the marriage, Wife insists she "obtained funding for most of her education" and continued working, at least part-time. *Id.* Further, she emphasizes that Husband also obtained teaching certificates during the marriage. *Id.* Thus, Wife maintains this factor should be neutral. *Id.* at 23.

Lastly, Wife challenges the trial court's decision to weigh factor 10 in Husband's favor.[10] *See* Wife's Brief at 25. That factor requires the court to consider "[t]he economic circumstances of each party at the time the division of property is to become effective." 23 Pa.C.S. § 3502(a)(10). Wife insists she "will have to pay income taxes now that she has been awarded SSD[, and] may also have tax consequences on her [children's educational investment plans] should she choose to withdraw from the accounts early." Wife's Brief at 25. Thus, she argues this factor should also be neutral.

Upon our review, we conclude Wife has failed to demonstrate the trial court abused its discretion in weighing these equitable distribution factors in favor of Husband. With regard to Factor 3, although physically unable to work,

_____

[10] Neither Wife nor the trial court address factors 10.1 and 10.2 separately from factor 10.

Wife receives significant, **non-taxable** disability payments. Moreover, while Husband's gross income is comparable to hers, his net monthly income ($5,610) is less than Wife's because he is required to pay income taxes. *See* Trial Ct. Op. at 12. Further, Wife's assertion that Husband has the potential to continue working, and increase his retirement benefits, is tempered by the fact that he is three years older than Wife, and does not have the opportunity for further advancement at work. *See* N.T., 2/13/20, at 139 (Husband stating, "I'm stuck doing what I'm doing."). Husband also testified that he will "no longer [be] allowed to collect a paycheck from . . . the community colleges [when retires as a firefighter,] because they are under the State Retirement System . . . and [he] couldn't take and make money from them when [he's] retired from the State." *Id.* at 138. Further, Husband explained the opportunity to become a full-time instructor at the State Fire Academy is very limited, because there are only three full-time instructors and they "typically look for a college degree," which he does not have.[11] *See id.* at 137-38.

With regard to Factor 4, which considers the contribution of one party to the education or increased earning power of the other, the trial court agreed with the Special Master that this factor weighed slightly in favor of Husband. *See* Trial Ct. Op. at 14. Wife earned both a bachelor's and master's degree

_____

[11] Husband testified that he is working toward earning his degree — he estimated he is a "[t]hird of the way" completed — but is taking only one course a semester. *See* N.T., 2/13/20, at 139.

during the marriage, which resulted in a "substantial increase in her income[.]" *Id.* Although she emphasizes that Husband also obtained teaching certificates during the marriage, the trial court pointed out that "Husband only teaches part-time and irregularly[.]" *Id.* Indeed, as noted above, those teaching certificates do not equate to an advanced degree. Further, while Wife contends most of her education was funded by her employer, Husband "worked an additional part-time job to augment their income while she was in school." *Id.* at 13; *see* N.T., 2/13/20, at 140.

Finally, with respect to Factor 10 — the economic circumstances of each party at the time of the division of property, including tax ramifications — the trial court again agreed with the Special Master's decision to weigh this factor in Husband's favor. The court explained: "Wife does not pay income tax on her private disability and there are no tax consequences for her [SSD] benefits[;] Husband will continue to pay federal, state, and local taxes on his income." Trial Ct. Op. at 17. As discussed *supra*, the trial court found, and we agree, Wife failed to prove that she will pay taxes on her SSD in the future. Moreover, to the extent Wife argues she may have to pay taxes on the children's educational investment accounts "should she choose to withdraw from the accounts early[,]" we conclude her claim is of no moment. *See* Wife's Brief at 25. The trial court determined the accounts were non-marital and belonged to the children. Trial Ct. Op. at 29. Thus, "all contributions to those Plans are property of the child, held on behalf of the child[,]" and not included in the equitable distribution award. *Id.* ("If not used for the

- 14 -

children's education, the funds in those accounts remain the property of each respective child and should be used by them or on their behalf.").

Thus, reviewing the trial court's distribution of the marital assets "as a whole," we conclude the court did not abuse its discretion in weighing the Section 3502(a) factors and dividing the assets 52% in favor of Husband and 48% in favor of Wife. **See Lee**, 978 A.2d at 383. Accordingly, Wife's second issue fails.

V. Valuation of Husband's Deferred Compensation Plan

In her third claim, Wife argues the trial court abused its discretion by valuing Husband's deferred compensation plan at $452,064.15, when, she asserts, it should be valued at $555,496.97, a difference of more than $100,000. Wife's Brief at 27-29. She maintains the value of the plan on September 30, 2019 — $555,496.97 — is the appropriate value for purposes of equitable distribution. **See id.** at 28. Although she appears to acknowledge that an increase in value from the date of separation until the date of valuation as a result of a party's personal contributions should not be considered, Wife insists "[t]he date the parties officially separated was in **October of 2019**." **Id.** at 29 (emphasis added). Since they agreed the date of valuation of assets was **September 30, 2019** — before their separation — Wife contends the full value of Husband's plan as of September 30, 2019, should be considered for equitable distribution purposes. **Id.**

As Wife aptly points out, this Court has acknowledged that "[t]he Divorce Code does not specify a particular method of valuing assets." Wife's

Brief at 27, *citing* **Smith**, 904 A.2d at 21. Rather, "a court must choose a date of valuation which best works economic justice between the parties." **Smith**, 904 A.2d at 18. Moreover, it is well-settled that although a party may be entitled to an increase in value of marital property (including a deferred compensation plan) beyond the date of separation, that party is not entitled to any increase resulting from post-separation personal contributions by the other party. **See Smith v. Smith**, 653 A.2d 1259, 1271 (Pa. Super. 1995); **Miller v. Miller**, 577 A.2d 205, 210 (Pa. Super. 1990).

Wife misconstrues the parties' date of separation. The Special Master determined the parties' date of separation was **October 15, 2015**, — the date Wife filed the complaint in divorce. **See** Special Master's Report at 3, 4. Wife did **not** take exception to this factual finding. Further, while Husband continued to live in the marital home until October of 2019, he testified that he "was sleeping on the sofa in the living room." N.T., 2/13/20, at 120. Under Section 3103 of the Divorce Code, there is a presumption that the date of separation "is established upon the filing and service of a divorce complaint[, and the] party attempting to rebut the presumption has the burden of proof." **McCoy v. McCoy**, 888 A.2d 906, 912 (Pa. Super. 2005) (citations omitted). **See** 23 Pa.C.S. § 3103 (defining "separate and apart" as "[c]essation of cohabitation, whether living in the same residence or not[; i]n the event a complaint in divorce is filed and served, it shall be presumed that the parties commenced to live separate and apart not later than the date that the complaint was served").

- 16 -

In determining the value of Husband's deferred compensation plan, utilizing the October 2015 date of separation, the court opined:

> Exhibit 72 reflects that the present value of the Deferred Compensation Plan on September 30, 2015 was $329,634.53. That amount before the date of separation on October 14, 2015 is marital. Exhibit 72 reflects that Husband made contributions in the amount of $61,377.52 from October 2015 to September 30, 2019, the date of valuation. Personal contributions divided by Marital Balance ($61,377.52 ÷ $329,634.53) makes for a ratio of 18.61987%. Total Value as of 9/30/2019 ($555,496.96) multiplied by 18.61987% equals a total non-marital portion of $103,432.81. The marital portion of Husband's Deferred Compensation Plan is therefore $452,064.15 ($555,496.96 — $103,432.81).

Trial Ct. Op. at 21-22. Wife does not dispute the trial court's calculations, only the date of separation. As we conclude the trial court properly designated the date of separation as the date Wife filed the divorce complaint, Wife is entitled to no relief on this claim.

## VI. Re-valuation of Husband's Retirement Account

In her final issue, Wife contends the trial court abused its discretion when it, *sua sponte*, re-valued Husband's SERS retirement account. Wife's Brief at 30. Wife maintains the court had no authority to do so because Husband did not challenge that valuation in his exceptions. **See id.** at 30-31. As Husband emphasizes in his brief, Wife does not argue the re-valuation is incorrect; rather, she simply insists the court had no authority to change the value *sua sponte*. **See** Husband's Brief at 19. We again conclude no relief is warranted.

It is well settled that "[a]lthough the master's report is entitled to great weight, the final responsibility of making the distribution rests with the court." *Trembach v. Trembach*, 615 A.2d 33, 36 (Pa. Super. 1992). Consequently,

[i]f in its discretion the court determines it must deviate from the recommendation of the master it may do so regardless of whether either party has raised the issue in an exception.

*Morschhauser v. Morschhauser*, 516 A.2d 10, 15 (Pa. Super. 1986).

Here, upon review of the trial court's opinion and the Special Master's Report, we agree with the trial court that the Special Master's valuation of Husband's SERS retirement account is not supported by the record. The trial court explained its reasoning as follows:

[T]he Special Master's Report, citing Notes of Testimony Page 153 and Exhibit 53, found that Husband's [SERS] retirement account had a marital value of $782,756 as of September 30, 2019. However, Husband testified and Exhibit 53 reflects that the present value of his SERS retirement account as of September 30, 2019 was $545,332.26. It is not clear from the record how the Special Master arrived at a marital value of $782,756 for the retirement account. Exhibit 54 states that the total Contributions and Interest as of November 1, 2015 were $66,598.55. Exhibit 53 states that the total Contributions and Interest as of September 30, 2019 were $96,730.19. This makes for post-separation contributions to the retirement account of $30,131.65 ($96,730.19 — $66,598.55). The balance as of November 1, 2015, the closest valuation to date of separation, was $311,093.40 (Exhibit 54). Nonmarital Contributions as of September 30, 2019 divided by Marital Portion at Separation makes for a ratio of 09.685725%. Therefore the nonmarital value of Husband's SERS Retirement Account is $52,809.3809 ($545,332.26 x 09.685725[%]). The marital value of Husband's SERS Retirement Account is $492,512.88 (rounded) ($545,332.26 — $52,809.3809).

Trial Ct. Op. at 24-25 (citation omitted). The trial court acted within its discretion when it recognized, and corrected, an error in the Special Master's valuation of Husband's SERS retirement account. *See Morschhauser*, 516 A.2d at 15. Wife provides no basis for us to disturb the court's re-valuation. Thus, no relief is warranted.

     Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/16/2021