J-A17008-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| MELISSA J. LEONARDIS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEVIN G. LEONARDIS | : | No. 1448 WDA 2024 |

Appeal from the Order Entered October 25, 2024
In the Court of Common Pleas of Bedford County Civil Division at No(s):
2021-53

BEFORE:  McLAUGHLIN, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:        **FILED: September 29, 2025**

Melissa J. Leonardis ("Wife") appeals from the equitable distribution order entered in this divorce action. She argues the trial court erred in finding the parties had not reached a settlement agreement and challenges the equitable distribution order. We affirm.

Wife and Keven G. Leonardis ("Husband") married in July 1996 and separated in December 2020. Wife filed for divorce in January 2021, seeking equitable distribution, alimony, alimony pendente lite ("APL"), and counsel fees and expenses.

The parties owned a wedding/event venue—Whispering Hollow Estates. They had two children. Husband was awarded custody of the children, one of whom was a minor at the time of the equitable distribution hearing. By letter dated September 20, 2023, Husband provided financial information on the business and outlined terms of a potential settlement under which Husband

would retain the business and the business debt. Exh. 1, May 2, 2024, Letter from Michelle A. Tokarsky, Esq. to Terry Despoy, Esq. dated Sept. 20, 2023. The letter detailed what would be distributed to Wife. It also stated that Husband would refinance or obtain a release within one year, and that Wife would join a civil suit against an individual if necessary. *Id.* An alternate proposal included in the letter was that Wife would retain the business and debt:

> Mrs. Leonardis can take control of the business, its assets and obligations and release my client and hold him harmless. This includes, to be specific, honoring all of the contractual event commitments for the remainder of 2023 and for 2024.

*Id.*

Wife responded that she would like the business assets and would refinance the business debt. Exh. 4, May 2, 2024, letter from Terry Despoy to Michelle Tokarsky dated Oct. 6, 2023. The parties then traded correspondence on various issues, including, among other things, discussions on a deadline for Wife to refinance. The parties also discussed Husband's use of non-marital funds to pay business obligations and whether Wife was entitled to the benefit of those payments. *See, e.g.,* Exh. 17, May 2, 2024, Letter dated Jan. 17, 2024 from Silverman, Tokarsky & Forman to Terry Despoy, Esq. The parties did not execute a marital settlement agreement.

In March 2024, Wife filed a petition to "enforce and clarify" a marriage settlement agreement. After a hearing and briefing from the parties, the court

denied Wife's petition.[1] The trial court then held an equitable distribution hearing over two days in July and September 2024.

At the hearing, Wife testified that her health was "stable." N.T., July 18, 2024, at 9. She stated she had a history of chronic migraines and a recurrent staph infection, and her source of income was social security disability. *Id.* Wife testified she became disabled and stopped working in March 2020. *Id.* at 12. She said that she had a retirement account from when she worked as a physician assistant, which she cashed out in July 2020 and from which the parties received $45,818.53. *Id.* at 12, 14-15. Wife stated that after separation, she transferred $22,000.00 from the joint account[2] she had with Husband to a personal account, because she believed it was her half of the retirement money. *Id.* at 16.

Wife testified that she wrote the business plan for the wedding venue business and helped Husband get financial backing. *Id.* at 19. She further contributed her physician assistant salary. *Id.* at 20. Wife also testified that at the start of the business, she helped clean the lodge, assisted with tours and bartending, and went to bridal shows to market the business. *Id.* at 29-30. She stated that after she developed chronic migraines, she no longer was able to help. *Id.* at 30. She testified that Husband has been operating the

---

[1] Wife unsuccessfully sought an interlocutory appeal by permission, and while those proceedings were pending, the trial court held the first day of the equitable distribution hearing with the parties' consent.

[2] Wife also took money from a second account, for a total of $26,000.00. Trial Ct. Op., filed Oct. 25, 2024, at 9 ("Equitable Dist. Op.").

business since the parties' separation. *Id.* at 32-33. Wife testified that she believed some items paid for from the business account were for Husband's personal expenses. *Id.* at 46-70, 77-108.

Wife testified that if she was awarded the business, her mother would give her $100,000.00 in working capital to "get the financials in a better situation." N.T., Sept. 30, 2024, at 232. Wife stated that she would "eliminate some of the needless assets to increase cash flow," including the John Deere and most of the landscaping equipment. N.T., July 18, 2024, at 114. She testified she would hire an experienced wedding coordinator and a project manager to cut the grass and clean the facility. *Id.* Wife testified that the "main reason [she] couldn't work was the positioning of the EMR and chronic neck pain that would trigger migraines," and if she was not in those positions, her migraines were controlled and she could supervise and manage a business. *Id.* at 115.

On cross-examination, Wife testified that Husband paid the mortgage, property taxes, and insurance for the property. *Id.* at 123. She testified that the base salary for a wedding coordinator would be $30,000.00 and that the lawn care to maintain the eight to 10 acre property would cost $500.00 per month. *Id.* at 142. Wife testified that she believed Husband's salary should be $50,000 per year. *Id.* at 150. She further agreed that when married, the parties co-mingled the business and personal expenses. *Id.* at 153-54.

Husband testified that he had been a wedding photographer and decided to turn the property into a wedding venue. N.T., Sept. 30, 2024, at 31. The

property was a farm and, before they purchased it, it had not been "touched for 60 years." *Id.* at 32. Husband did most of the renovations on the property, with help from family and friends. *Id.* at 33. Wife worked as a physician assistant. *Id.* at 34. Husband testified that the family lived in the main house, but the basement of the house was used for the business, as a groom's lounge. *Id.* He testified the property had been used as a wedding venue for approximately eight years, four before the separation and four after. *Id.* at 34-35. Husband testified that in addition to the main house, the property had the wedding venue, a barn, and six cottages. *Id.* at 28, 35-36. Husband testified that he maintained the property, advertised the business, and did the sales. *Id.* at 47. Husband testified that the children help with the business. *Id.* at 29-30.

Husband stated he inherited money from his parents, including money from insurance policies, and used the money to pay the bills. *Id.* at 54, 79-80. He testified that he had been behind in payments, but was able to pay in full before the property went into foreclosure. *Id.* at 55, 70. According to Husband, it is not possible to subdivide the property and sever the residence from the wedding venue, as they share a driveway, sewage, electrical, and water, among other things. *Id.* at 56.

Husband testified that after the parties separated, he removed Wife from the business bank account because she withdrew all but $500.00 from the account. *Id.* at 42, 112-13. Husband did not have a separate personal

bank account and had always comingled his business and personal expenses. *Id.* at 44. He does not take a salary for his work with the business. *Id.* at 61.

Husband testified he had not been "pushing" the business as much because of the parties' dispute. He said it was "hard to write up a contract and promise someone you're going to be there next year if you don't even know if you're going to be there on the property." *Id.* at 116. He stated he had two weddings booked for 2025, and did not do wedding consultations or advertising because he cannot "promise people something and not be there for them." *Id.*

The court issued an equitable distribution order, awarding the business and its debt to Husband. It denied Wife's claim for fair rental value for the marital residence and found that her withdrawal of funds from joint accounts was an advance on the equitable distribution.

Wife filed a timely appeal and raises the following issues:

> 1. Did the Trial Court err and/or abuse its discretion when it denied [Wife's] Petition to Enforce and Clarify Marriage Settlement Agreement?
>
> 2. Did the Trial Court err and/or abuse its discretion when awarding the business and home to [Husband] when he was not marketing the business and could not afford the payments?
>
> 3. Did the Trial Court err and/or abuse its discretion by not counting business funds used for personal purposes against [Husband]?
>
> 4. Did the Trial Court err and/or abuse its discretion in determining that the personal credit cards of [Husband] were business debts?

5. Did the Trial Court err and/or abuse its discretion in determining that the fair market rental value should not be awarded?

6. Did the Trial Court err and/or abuse its discretion in charging [Wife] with one-half of her retirement but not doing the same for [Husband]?

7. Did the Trial Court err and/or abuse its discretion by accepting debt values based on a bald assertion instead of documentation?

Wife's Br. at 9-10 (trial court answers omitted).

Wife first argues the court erred when it denied her petition to "enforce and clarify" a marriage settlement agreement. She claims that Husband's September 2023 letter constituted a settlement offer, which included an alternate offer for Wife to receive the business. She maintains she accepted the alternate offer. She asserts that this was an offer and acceptance, as her response included no counteroffer. She maintains that Husband then demanded terms not in the offer letter, including that Wife obtain financing as a condition precedent, rather than providing her one year to obtain financing. Wife maintains that courts can clarify terms or fill in missing terms if it is clear the parties intended to be bound by an agreement.

"A settlement agreement between spouses is governed by the law of contracts unless the agreement provides otherwise." *Stamerro v. Stamerro*, 889 A.2d 1251, 1258 (Pa.Super. 2005) (brackets omitted) (citation omitted). A contract is enforceable when the parties "1) reach a mutual understanding, 2) exchange consideration, and 3) delineate the terms of their bargain with

sufficient clarity." ***Weavertown Transp. Leasing, Inc. v. Moran***, 834 A.2d 1169, 1172 (Pa.Super. 2003).

"[T]he trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function." ***Stamerro***, 889 A.2d at 1257 (citation omitted). However, when applying contract law to the facts as found, our standard of review is *de novo* and our scope of review is plenary. ***Id.*** at 1257-58.

The trial court concluded the parties had not reached a binding contract. The court reasoned that "the terms were not fully negotiated with sufficient clarity." Trial Ct. Op., filed June 5, 2024, at 3 ("Contract Op."). It pointed out that the letters did not address Wife's claims for APL, alimony, and counsel fees and costs.

This was not error. Husband's letter contained no details of an agreement as to the assets or their distribution if Wife maintained the business. The alleged "alternate offer" merely stated that Wife would take the business assets and would refinance the business debt. Husband's letter also did not address the claims for APL, alimony, and counsel fees and costs. The letter was not sufficiently clear to constitute terms of a marital settlement agreement by which the parties could be bound.

Wife's remaining issues challenge the equitable distribution award. This Court reviews "a challenge to the trial court's equitable distribution scheme for an abuse of discretion." ***Hess v. Hess***, 212 A.3d 520, 523 (Pa.Super. 2019). "We do not lightly find an abuse of discretion, which requires a showing

of clear and convincing evidence." *Id.* (quoting *Brubaker v. Brubaker*, 201 A.3d 180, 184 (Pa.Super. 2018)). A court has not abused its discretion "unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record." *Id.* (quoting *Carney v. Carney*, 167 A.3d 127, 131 (Pa.Super. 2017)). When reviewing an equitable distribution award, "we measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." *Id.* (quoting *Hayward v. Hayward*, 868 A.2d 554, 558 (Pa.Super. 2005)).

"We do not evaluate the propriety of the distribution order upon our agreement with the court's actions nor do we find a basis for reversal in the court's application of a single factor." *Hess*, 212 A.3d at 523 (quoting *Harvey v. Harvey*, 167 A.3d 6, 17 (Pa.Super. 2017)) (internal brackets omitted). Instead, "we look at the distribution as a whole in light of the court's overall application of the 23 Pa.C.S.A. § 3502(a) factors for consideration in awarding equitable distribution." *Id.* Moreover, we cannot reverse a trial court's credibility determinations if the record supports them. *Id.* (citation omitted).

Wife maintains the court abused its discretion when it awarded the business and home to Husband when he was not marketing the business and could not afford the payments. Wife claims Husband did not have a plan to keep the business afloat, while she did. She asserts she had access to capital because her mother would loan her $100,000.00, and she had income from

her disability benefits to keep the business running. She states she also had a plan to liquidate assets to improve cash flow, which would allow her to hire people to do the physical work she could not perform. She maintains she was in the best position to keep the business running.

The trial court concluded that Wife mischaracterized the testimony when she claimed Husband testified he could not properly manage the property or obtain refinancing, did not advertise the business, did not attend trade shows, and did not make the mortgage payment. Trial Ct. Op., filed Dec. 23, 2024, at 6 ("1925(a) Op."). The court found it was reasonable for Husband not to actively market or advertise the business during the negotiations, after Wife indicated she would take over the business. Equitable Dist. Op. at 5. It further noted that when the negotiations fell apart, Husband did not have much cash flow to cover the operating expenses, and therefore paid the August mortgage late. *Id.* The court concluded Wife had "been content to sit from afar while Husband and the children have worked tirelessly to operate this business during the custody and divorce litigation." *Id.*

The record supports the court's credibility determinations and factual findings, and it did not abuse its discretion in awarding Husband the business and home. Wife's reliance on Husband's testimony about advertising and financing is misplaced, as the parties had been planning for Wife to operate the business.

Wife next maintains the court erred by not counting business funds used for personal purposes against Husband. She notes Husband used business

revenues to pay personal expenses and the business paid for his residence and utilities. She argues the court should have given her a credit for these funds under partnership law. She further claims the court's failure to charge Husband for use of the business funds for personal expenses failed to recognize that the business showed no profit and that a business owner using business funds for personal purposes in lieu of a salary is tax evasion.

The court found:

> Wife asks this [c]ourt to award her 1/2 of the value of the personal expenses that Husband utilized during the separation. Husband acknowledged paying personal living expenses for him and the children from this account. Husband operated the business by working far in excess of a typical full-time job. It would be profoundly inequitable to require to Husband to pay Wife approximately $70,000 (incurred over the course of the four-year separation) in what she claims is essentially lost business revenue, while she did nothing to contribute to the business operation during the four-year separation. The other alternative would have been for Husband to take a salary, which this [c]ourt notes would have been a drastic underpayment for the work being done by Husband. Wife seemingly expected Husband to keep running the business successfully, without taking a salary or funds to pay for personal expenses for him and the children. The [c]ourt declines to do so.

Equitable Dist. Op. at 6. The court further noted that paying the parties' and the children's expenses out of the business accounts had been a "longstanding practice of both parties." *Id.* at 21.

The record supports the court's factual findings and it did not abuse its discretion when it did not provide Wife a credit for Husband's personal

expenses. Husband did not take a salary from the business, and both parties used the business account to pay for family expenses.

Wife next maintains the court erred when it determined the credit cards were business debts. She argues that Husband used the cards for personal and business expenses and the balances should have been deemed personal debt. She maintains the court should have determined the business value to be $1,597,780 and the debt to be $1,563,291, which would have given the business a value of $34,489.

The trial court found it was proper to not treat the expenses as business expenses:

> Wife further argues that but for these personal expenses paid out of the business account, there would be business profits that she would be entitled to in equitable distribution. Wife bases this claim upon the premise that Husband should not have paid personal expenses out of the business account. However, this argument is flawed for multiple reasons. The longstanding practice of both parties during the marriage was to pay personal expenses out of the business account(s). Wife herself engaged in this practice. The other option would have been for Husband to pay himself a salary from the business, then use his salary for his personal expenses. While this practice would most certainly have been more appropriate from an accounting perspective, it does not negate the fact that Husband and the children were working and rather than receiving a traditional paycheck, their expenses were paid out of the business account. It is unreasonable for Wife to expect Husband and the children to work and run the business and not receive compensation therefrom. The [c]ourt wonders what Wife expected Husband to do? Was he to run the business, work 60-hour weeks, take care of the minor children, preserve the marital assets and pay all the bills with no paycheck or no payment of expenses? The [c]ourt notes that Wife has not paid any child support or contributed

any of her social security derivate benefit to the financial support of the children during their minority. Furthermore, the [c]ourt analyzed the evidence as to the reasonableness of Husband (and the children's) personal expenses. Both parties submitted evidence of what was business vs. personal expenses. The [c]ourt finds that Husband's evidence thereof was more accurate as to the division between business and personal.

During his testimony, Husband credibly testified as to the classification of expenses and he was very forthright in admitting which ones were personal rather than business. The [c]ourt viewed Wife's testimony as supposition rather than based upon credible evidence. Wife was critical of Husband taking the children to Kennywood one time and Hershey Park once per year, however, these outings were certainly not unreasonable in light of the circumstances, especially considering both children work hard in assisting their father with running the business [and] have not received paychecks. In his testimony, Husband further explained that he classified typical teenager expenses, such as Amazon Prime, Nintendo, and Netflix as "vacation/entertainment." Furthermore, Husband deposited a significant amount of non-marital funds into the business to keep it solvent. But for Husband's infusion of non-marital funds, the business likely would not have survived. If the [c]ourt were to award Wife the business, it would be equitable and appropriate to treat these inherited funds as a business debt. However, since the [c]ourt intends to award Husband the business, the [c]ourt is instead treating these inherited funds as an off-set to Wife's claim for funds representing Husband's personal expenses paid out of the business. The [c]ourt will deny Wife's claim for funds used as Husband's personal expenses.

Equitable Dist. Op. at 21-22.

The record supports the court's factual findings, and it did not abuse its discretion in finding the cards were used for both business and personal expenses, and not separating out the personal expenses. As discussed above,

Husband used the cards to pay for personal expenses, but did not take a salary.

Wife next claims the court erred when it determined that she should not be awarded fair rental value of the marital home. She argues she was excluded from the home and that Husband had the business, which was a marital asset, paying for the home expenses. She argues the factors courts consider to determine whether an award of fair rental value is proper favored such an award: Husband occupied the residence to the exclusion of Wife, the parties' interests can easily be determined, the period can easily be determined, and Husband should not be entitled to any payment for costs to maintain the home because payments were made by the business. Wife claims she was seeking fair rental value for only the house, not the entire property.

Whether to grant rental value of a property as part of an equitable distribution award is within the discretion of the trial court. *Lee v. Lee*, 978 A.2d 380, 385 (Pa.Super. 2009). "Generally, 'parties have an equal one-half interest in the marital property,' and thus 'the dispossessed party will be entitled to a credit for one-half of the fair rental value of the marital home.'" *Id.* (citation omitted). Courts apply the following analysis when deciding whether to award rental credit:

> First, the general rule is that the dispossessed party is entitled to a credit for the fair rental value of jointly held marital property against a party in possession of that property, provided there are no equitable defenses to the credit. Second, the rental credit is based upon, and therefore limited by, the extent of the dispossessed party's interest in the property. . . . Third, the rental value is limited

to the period of time during which a party is dispossessed and the other party is in actual or constructive possession of the property. Fourth, the party in possession is entitled to a credit against the rental value for payments made to maintain the property on behalf of the dispossessed spouse. Generally, in regard to the former marital residence, payments made on behalf of the dispossessed spouse will be one-half of the expenses including debt service on the property. This is so because equity places a presumption upon the dispossessed spouse of responsibility for expenses to the extent of her/his ownership interest which is generally one-half. Finally, we note that whether the rental credit is due and the amount thereof is within the sound discretion of the court of common pleas.

*Id.* at 385-86 (citation omitted). Further, "[i]n equitably distributing the fair rental value . . . , the trial court must consider the efforts of each party to preserve the asset." *Schneeman v. Schneeman*, 615 A.2d 1369, 1377 (Pa.Super. 1992).

Here, the trial court found Wife was not entitled to an award of fair rental value:

Wife is claiming $27,600, representing half of the fair rental value of the home during the 46 months of the separation. Wife left the marital home voluntarily and briefly stayed with her mother until she secured an apartment a short time later. Wife testified that Husband and the children made her leave the residence. Husband and the children were angry at Wife because they believed that she was lying about her whereabouts and was engaged in an extra-marital affair. Following the separation, Wife accepted Husband's assistance in securing furniture and moving into her new apartment. The [c]ourt notes that Wife did not file a Petition with the [c]ourt regarding occupancy of the marital home during the pendency of the divorce. Additionally, Husband did not file for exclusive possession of the marital home. Of relevance to the [c]ourt is that Husband exercised primary physical custody of the two children during the separation. Additionally, Husband continued to operate the business during the separation, which included maintaining the

property and paying all the liabilities associated therewith. In addition to having custody of the children, Husband solely paid the mortgage, taxes, insurance, utilities and other expenses, with no assistance from Wife. The home expenses and business expenses are intertwined and are unable to be effectively divided. For example, the residence sits on the same property as the barn and wedding venue. The "Groom's Lounge" is located in the basement of the home. The property taxes and mortgage are for the business and home together and there was no evidence of a way to fairly apportion the various expenses to the business or to the home. For example, the 2022 and 2023 property and county taxes totaled over $24,000.

Equitable Dist. Op. at 20-21.

The trial court did not abuse its discretion. The business and home are intertwined, and Husband has been paying all expenses on the property and marital home, where he and the children reside. Based on the facts here, and the equitable distribution order entered by the court, we cannot conclude it was an abuse of discretion to deny Wife's claim for fair rental value.

Wife maintains the court erred in charging Wife with one-half of her retirement but not charging Husband with the same. She claims that "[a]fter being thrown out of the marital residence, [Wife], who was disabled, had no job, and no[] income, took what she believed to be half of a retirement distribution from her former job six months prior to separation from the parties' bank accounts." Wife's Br. at 28. Wife maintains that if it was an early distribution of marital assets for her, as the court found, it should have charged Husband with the other half. She claims the court did not address why Husband was not charged with an early distribution, noting that because

Husband co-mingled expenses it is unclear whether the money went to the business rather than personal expenses.

Regarding Wife's retirement account, the trial court found the following:

> Husband does not own any retirement accounts. Prior to separation, Wife liquidated a retirement account in the amount of $45,818. She deposited these funds into the business checking account and a joint checking account. Upon separation, Wife unilaterally withdrew a total of $26,000 from two bank accounts, representing "her half" of the marital retirement account. Wife withdrew a portion of these funds from the business checking account, without prior notice to Husband. Unilaterally removing these funds from the business operating account placed the business at dire risk of insufficient operating capital. As a result, Husband removed Wife from the business account, which this [c]ourt finds reasonable. The [c]ourt will treat this $26,000 as an advance of equitable distribution taken by Wife.

Equitable Dist. Op. at 9.

In its Rule 1925(a) opinion, the court explained that it treated the funds Wife withdrew as an advance because it was "done surreptitiously without notice to Husband, and Husband credibly testified that the business operating account was dangerously depleted and [it] put the business operations in serious jeopardy." 1925(a) Op. at 6-7. The court credited the other half to Husband because those funds were left in the business operating account and used to keep the business afloat, and the court ultimately awarded the business to Husband. *Id.* at 7.

The court did not abuse its discretion when it treated the withdrawal as an advance on the equitable distribution award. Wife took her portion of the

- 17 -

retirement account money and used it for her personal expenses. Husband used his portion toward the business.

Wife next argues the court erred by accepting debt values based on bald assertions without documentation. She maintains the court accepted numbers on an exhibit created by Husband, without requiring Husband to support the numbers. She acknowledges Husband produced statements for the Capital One cards but argues the balances were different than the balances listed for cards on the exhibit.

The court found Wife ignored its factual findings. 1925(a) Op. at 7. The court pointed out that both parties submitted evidence of personal versus business expenses and the court found Husband's evidence more accurate as to the division. Equitable Dist. Op. at 22. It found Husband credibly testified to the classification of expenses and was forthright when admitting which were personal rather than business. *Id.* The court found Wife's testimony "was supposition rather than based upon credible evidence." *Id.*

The record supports the court's factual findings and it did not abuse its discretion in valuing the assets and debts. This claim lacks merit.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 09/29/2025